Floyd W. Bybee, #012651
**LAW OFFICE OF
FLOYD W. BYBEE, PLLC**
2473 S. Higley Road
Suite 104, #308
Gilbert, Arizona 85295-1103
Office: (480) 756-8822
Fax: (480) 302-4186
floyd@bybeelaw.com

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| **Simon R. Martinez;** and **Kimberly J. Martinez;** | No. |
| Plaintiffs, | **COMPLAINT** |
| v. | |
| **Experian Information Solutions, Inc.;** **Chase Home Finance, LLC;** **Capital One Bank;** **Bank of America, N.A.;** and **GE Money Bank;** | (Jury Trial Demanded) |
| Defendants. | |

Plaintiffs, Simon and Kimberly Martinez, for their complaint allege as follows:

### I.  PRELIMINARY STATEMENT

1. Plaintiffs bring this action for damages based upon Defendants' violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq*. Plaintiffs seek an

|   |   |
|---|---|
| 1 | award of statutory damages, actual damages, punitive |
| 2 | damages, costs and attorney's fees. |

## II. <u>JURISDICTION</u>

2. Jurisdiction of this Court, over this action and the parties herein, arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331. Venue lies in the Phoenix Division of the District of Arizona as Plaintiffs' claims arose from acts of the Defendants perpetrated therein.

## III. <u>PARTIES</u>

3. Plaintiffs are residents of Maricopa, Arizona.
4. Plaintiffs are "consumers" as defined by FCRA § 1681a(c).
5. Defendant Experian Information Solutions, Inc. is an Ohio corporation.
6. Experian conducts business within the state of Arizona.
7. Experian is a both a "person" and a "consumer reporting agency" as those terms are defined and contemplated under the FCRA.
8. Defendant Chase Home Finance, LLC is a Delaware limited liability company.
9. Chase conducts business within the state of Arizona.
10. Chase is a "furnisher" of information as contemplated by FCRA § 1681s-2(a) & (b), which regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer

transactions or experiences with consumers.

11. Defendant Capital One Bank is a Virginia corporation with its headquarters located at 4851 Cox Road, Glen Allen, Virginia.

12. Capital One conducts business within the state of Arizona.

13. Capital One is a "furnisher" of information as contemplated by FCRA § 1681s-2(a) & (b), which regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences with consumers.

14. Defendant Bank of America, N.A. is a National Bank with its headquarters located at 101 S. Tryon Street, Charlotte, North Carolina 28255.

15. Bank of America conducts business within the state of Arizona.

16. Bank of America is a "furnisher" of information as contemplated by FCRA § 1681s-2(a) & (b), which regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences with consumers.

17. Defendant GE Money Bank is federal savings bank with its headquarters located at 4246 South Riverboat Road, Suite

200, Salt Lake City, Utah 84123.

18. GE Money Bank conducts business within the state of Arizona.

19. GE Money Bank is a "furnisher" of information as contemplated by FCRA § 1681s-2(a) & (b), which regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences with consumers.

### IV. Factual Allegations

#### a. Chase Home Finance, LLC

20. Plaintiffs obtained a mortgage in or about 1997 from Chase, account number 1512133477.

21. Plaintiffs filed chapter 7 bankruptcy on September 22, 2003.

22. Plaintiffs listed the Chase debt in their bankruptcy schedules.

23. The bankruptcy clerk mailed Chase a Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines on October 12, 2003.

24. Chase received Plaintiffs' bankruptcy notice in October 2003.

25. Chase made an appearance in Plaintiffs' bankruptcy case through its attorney Rex Anderson on October 31, 2003.

26. Chase filed a Motion for Relief from Stay in Plaintiffs'

1    bankruptcy case.
2  27. The bankruptcy court entered a discharge order on
3      January 12, 2004 discharging Plaintiffs' debt previously
4      owed to Chase.
5  28. A copy of the discharge order was mailed on January 14,
6      2004 to Chase and to its attorney, Rex Anderson.
7  29. Chase received notice of Plaintiffs' discharge in
8      January 2004.
9  30. Subsequent to the discharge, Plaintiffs contacted Chase
10     at least six (6) times requesting that it delete its
11     post-bankruptcy reporting of late payments and failure
12     to acknowledge that the account was included in
13     Plaintiffs' bankruptcy.
14 31. During this time, Plaintiffs' bankruptcy attorney also
15     contacted Chase concerning its reporting of post-
16     bankruptcy derogatory information to the credit bureaus.
17 32. Plaintiff also called Experian and disputed the Chase
18     account on March 19, 2006.
19 33. Plaintiffs applied to rent a home in February 2007 and
20     were denied based upon a credit report issued by
21     California Credit Information Solutions ("CCIS")
22     containing information from Experian.
23 34. The CCIS report dated February 20, 2007 showed Experian
24     reporting the Chase account with the status of "Paid
25     Foreclosure," and with derogatory monthly reports from

- 5 -

December 2003 through February 2005.

35. All the derogatory reporting by Chase in the Experian report was post-bankruptcy.

36. The Chase tradeline on the Experian report made no mention that the account was included and discharged in Plaintiffs' bankruptcy.

37. Plaintiffs also received a merged credit report dated March 1, 2007 from Kroll Factual Data which included information from all three national credit reporting agencies, including Experian.

38. The Kroll report reflected Chase reporting its account to Experian, Trans Union and Equifax with a status of "included in bankruptcy."

39. The Kroll report also showed the Chase account with fourteen (14) derogatory monthly reports from December 2003 through March 2006.

40. Plaintiffs subsequently disputed the Chase tradeline with all three credit reporting agencies, including Experian.

41. Experian sent Plaintiff Simon Martinez an updated report dated June 29, 2007.

42. Simon's Experian report showed Chase reporting the account with the status of "Foreclosure" and with post-bankruptcy derogatory monthly payment history from December 2003 to February 2005.

43. Simon's Experian report also stated that it had verified the Chase account in June 2006.
44. Experian sent Plaintiff Kimberly Martinez an updated report dated June 22, 2007.
45. Kimberly's report reflected Chase reporting the account with the status of "Foreclosed/Past Due 180 days" and with post-bankruptcy derogatory monthly payment history from December 2003 to February 2005.
46. Plaintiffs again disputed the account with Chase and with Experian.
47. Chase sent Plaintiffs a letter dated August 3, 2007 acknowledging that the account should report as included in bankruptcy, and that the payment history after September 2003 should not be reported.
48. Chase also stated in its letter that it would request the credit reporting agencies to update the Chase tradelines to reflect the correct reporting of the account.
49. Plaintiffs received a merged credit report dated September 27, 2007 from CBC Innovis.
50. The CBC report contained information reported by Experian.
51. The CBC report showed Experian reporting a Chase tradeline as a foreclosure as of January 2005, February 2005 and March 2006.

52. Upon information and belief, Experian had information in its records that Plaintiffs had filed Chapter 7 Bankruptcy in September 2003, and that the Chase account was included and discharged in the bankruptcy.

### b.  Capital One Bank

53. Plaintiffs opened a credit card account with Capital One in November 2000, account number 5291491820355582 ("5291").
54. Plaintiffs opened a second account with Capital One in January 2002, account number 7812602124393071 ("7812").
55. Plaintiffs included and listed both Capital One accounts in their Chapter 7 Bankruptcy.
56. Capital One received Plaintiffs' bankruptcy notice in October 2003.
57. Capital One received notice of Plaintiffs' discharge in January 2004.
58. Plaintiffs disputed the Capital One accounts reporting post-bankruptcy derogatory payment history to all three national credit reporting agencies, including Experian.
59. The February 2007 CCIS credit report showed that Experian was reporting the Capital One account 7812 with a current status of 120 days late, and 120 days delinquent from February 2006 through February 2007.
60. The CCIS report also showed that the Capital One account 7812 had a balance owing of $13,488.

61. The February 2007 CCIS credit report showed that Experian was reporting the Capital One account 5291 with a current status of 150 days late, and 150 days late from February 2006 through February 2007.
62. The CCIS report also showed that the Capital One account 5291 had a balance owing of $8,978.
63. The CCIS report also showed a second tradeline reflecting the same erroneous information from Capital One.
64. The March 1, 2007 report from Kroll showed that Experian was reporting the Capital One account 5291 with a current status of Bankruptcy, account closed February 2007, and with a current balance of $0.00.
65. The Kroll report also showed Capital One through Experian reporting 90 day late payments from February 2006 through February 2007.
66. Plaintiffs disputed the Capital One account 5291 with Experian.
67. Plaintiff Simon Martinez's Experian report dated June 29, 2007 showed the Capital One account 5291 had been "Updated," yet it continued to show 120 days late as of October 2003 and 90 days late as of September 2003, and a status of "Past due 120 days" as of January 2004.
68. Simon's June 29, 2007 Experian report also erroneously reflected under the Capital One tradeline that the "Debt

- 9 -

1  [was] included in Chapter 7 Bankruptcy on January 12,
2  2004."
3  69. Plaintiff Kimberly Martinez's Experian report dated June
4      22, 2007 showed the Capital One account 5291 had been
5      "Updated," yet it continued to show 150 days late as of
6      November 2003, 120 days late as of October 2003, and 90
7      days late as of September 2003, and a status of "Past
8      due 150 days" as of January 2004.
9  70. Kimberly's June 22, 2007 Experian report also
10     erroneously reflected under the Capital One tradeline
11     that the "Debt [was] included in Chapter 7 Bankruptcy on
12     January 12, 2004."
13 71. The CBC report dated September 27, 2007 also showed the
14     Capital One account 5291 as a current account with a
15     balance of $8,978, and a current status of 120 days past
16     due.
17 72. The CBC report also reflected the recent reporting by
18     Experian and Capital one of a 120 late payment as of
19     September 2007 and August 2007.
20 73. The CBC report reflected the Capital One account 7812 as
21     "charged off" as of August 2005, and twenty post-
22     bankruptcy payments of 90 days late.
23 74. Upon information and belief, Experian had information in
24     its records that Plaintiffs had filed Chapter 7
25     Bankruptcy in September 2003, and that the Capital One

|   |   |
|---|---|
| 1 | accounts were included and discharged in the bankruptcy. |
| 2 | **c.  Bank of America** |
| 3 | 75. Plaintiffs opened a credit card account with Bank of America in January 1999, account number 4313512997051667 ("4313"). |
| 6 | 76. Plaintiffs included and listed the Bank of America account in their Chapter 7 Bankruptcy. |
| 8 | 77. Bank of America received Plaintiffs' bankruptcy notice in October 2003. |
| 10 | 78. Bank of America received notice of Plaintiffs' discharge in January 2004. |
| 12 | 79. The February 2007 CCIS credit report showed that Experian was reporting the Bank of America account with a current status of bankruptcy, but with 150+ days late in November 2003, 120 days late in October 2003, and 90 days late in September 2003. |
| 17 | 80. The March 1, 2007 report from Kroll showed that Experian was reporting the Bank of America account with a current status of Bankruptcy, and a last activity date of December 2003. |
| 21 | 81. The Kroll report also showed Bank of America through Experian reporting 90+ days late in November 2003, 90+ days late in October 2003, and 90+ days late in September 2003. |
| 25 | 82. Plaintiffs disputed the Bank of America account with the |

- 11 -

      three national credit reporting agencies, including Experian.

83. Plaintiff Kimberly Martinez's Equifax report dated June 13, 2007 reflects Bank of America reporting their tradeline with a status of included in bankruptcy, but with post-bankruptcy derogatory payment history of 90 days late from October 2003 through April 2004.

84. Plaintiff Kimberly Martinez's Experian report dated June 22, 2007 showed the Bank of America account had been "Updated," yet it continued to show 150 days late as of November 2003, 120 days late as of October 2003, and 90 days late as of September 2003, and a status of "Past due 150 days" as of January 2004.

85. Kimberly's June 22, 2007 Experian report also erroneously reflected under the Bank of America tradeline that the "Debt [was] included in Chapter 7 Bankruptcy on January 12, 2004."

86. The CBC report dated September 27, 2007 showed the Bank of America account reporting to Experian as 150 days late as of November 2003, and 120 late as of October 2003.

87. The CBC report also reflected Experian reporting the Bank of America account as "charged off" as of January 2004.

88. Upon information and belief, Experian had information in

|   |   |
|---|---|
| 1 | its records that Plaintiffs had filed Chapter 7 |
| 2 | Bankruptcy in September 2003, and that the Bank of |
| 3 | America account was included and discharged in the |
| 4 | bankruptcy. |

### d. GE Money Bank

89. Plaintiffs opened a charge card account with GE Money Bank through Sam's Club in November 1997 with the account number 7714210143373108 ("Sam's Club").

90. Plaintiff also opened a second account with GE Money Bank through JC Penney in January 1994, account number 5223534651 ("JC Penney").

91. Plaintiffs included and listed both GE Money Bank accounts in their Chapter 7 Bankruptcy.

92. GE Money Bank received Plaintiffs' bankruptcy notice in October 2003.

93. GE Money Bank received notice of Plaintiffs' discharge in January 2004.

94. Plaintiffs disputed the Sam's Club account with Experian in June 2007.

95. Plaintiff Simon Martinez's Experian report dated June 29, 2007 reflected that Experian investigated and updated the Sam's Club account.

96. Simon's June 2007 Experian report showed the Sam's Club account with the erroneous notation "Filed Chapter 7 Bankruptcy on Jan[uary] 12, 2004."

97. The CBC report dated September 27, 2007 showed the Sam's Club account reporting to Experian with a current status of "Charge off" as of January 2004.
98. The CBC report also showed the JC Penney account reporting to Experian with a current status of "Charge off" as of January 2004.
99. Upon information and belief, Experian had information in its records that Plaintiffs had filed Chapter 7 Bankruptcy in September 2003, and that the GE Money Bank accounts were included and discharged in the bankruptcy.

### V. Causes of Action

#### a. Fair Credit Reporting Act

100. Plaintiffs repeat, reallege, and incorporate by reference the foregoing paragraphs.
101. Experian failed to conduct a reasonable investigation of Plaintiffs' disputes, and otherwise failed to comport with FCRA § 1681i.
102. Experian failed to adopt and follow reasonable procedures to assure the maximum possible accuracy of Plaintiffs' consumer credit and other personal information, as required by the FCRA.
103. Experian has continually added, stored, maintained and disseminated personal and credit information, in consumer reports it prepared and issued, about Plaintiffs which were inaccurate, false, erroneous and

misleading despite notice from Plaintiffs that such information was inaccurate.

104. Experian has willfully, or alternatively, negligently, violated FCRA §§ 1681e(b) and 1681i on multiple occasions.

105. As a direct result and proximate cause of Experian's continued reporting of erroneous and adverse information on Plaintiffs' credit reports, Plaintiffs have suffered and continue to suffer damages including, but not limited to, humiliation, embarrassment, anxiety, credit denial, higher interest rates, and/or loss of opportunity.

106. Chase failed to conduct a reasonable investigation of Plaintiffs' disputes, and otherwise failed to comport with FCRA § 1681s-2(b).

107. Chase has willfully, or alternatively, negligently, violated FCRA § 1681s-2(b) on multiple occasions.

108. As a direct result and proximate cause of Chase's continued reporting of erroneous and adverse information to the credit bureaus concerning Plaintiffs, Plaintiffs have suffered and continue to suffer damages including, but not limited to, humiliation, embarrassment, anxiety, credit denial, higher interest rates, and/or loss of opportunity.

109. Capital One failed to conduct a reasonable investigation

1     of Plaintiffs' disputes, and otherwise failed to comport
2     with FCRA § 1681s-2(b).
3 110. Capital One has willfully, or alternatively,
4     negligently, violated FCRA § 1681s-2(b) on multiple
5     occasions.
6 111. As a direct result and proximate cause of Capital One's
7     continued reporting of erroneous and adverse information
8     to the credit bureaus concerning Plaintiffs, Plaintiffs
9     have suffered and continue to suffer damages including,
10     but not limited to, humiliation, embarrassment, anxiety,
11     credit denial, higher interest rates, and/or loss of
12     opportunity.
13 112. Bank of America failed to conduct a reasonable
14     investigation of Plaintiffs' disputes, and otherwise
15     failed to comport with FCRA § 1681s-2(b).
16 113. Bank of America has willfully, or alternatively,
17     negligently, violated FCRA § 1681s-2(b) on multiple
18     occasions.
19 114. As a direct result and proximate cause of Bank of
20     America's continued reporting of erroneous and adverse
21     information to the credit bureaus concerning Plaintiffs,
22     Plaintiffs have suffered and continue to suffer damages
23     including, but not limited to, humiliation,
24     embarrassment, anxiety, credit denial, higher interest
25     rates, and/or loss of opportunity.

115. GE Money Bank failed to conduct a reasonable investigation of Plaintiffs' disputes, and otherwise failed to comport with FCRA § 1681s-2(b).
116. GE Money Bank has willfully, or alternatively, negligently, violated FCRA § 1681s-2(b) on multiple occasions.
117. As a direct result and proximate cause of GE Money Bank's continued reporting of erroneous and adverse information to the credit bureaus concerning Plaintiffs, Plaintiffs have suffered and continue to suffer damages including, but not limited to, humiliation, embarrassment, anxiety, credit denial, higher interest rates, and/or loss of opportunity.
118. Pursuant to 15 U.S.C. § 1681n, any person who willfully fails to comply with any requirement imposed under the FCRA with respect to any consumer is liable to that consumer in an amount equal to the sum of (1) any actual damages sustained by the consumer as a result of the failure or damages or not less than $100.00 and not more than $1,000.00; (2) such amount of punitive damages as the court may allow; and (3) in the case of any successful action to enforce any liability under 15 U.S.C. § 1681n, the costs of the action together with reasonable attorneys' fees.
119. As a result of Defendants' willful failure to comply

1  with the FCRA, Defendants are liable to Plaintiffs in an
2  amount equal to the sum of (1) any actual damages
3  sustained by Plaintiffs as a result of the failure or
4  damages of not less than $100.00 and not more than
5  $1,000.00 for each such violation; (2) such amount of
6  punitive damages as the court may allow; and (3) the
7  costs of this action together with reasonable attorneys'
8  fees.
9  120. Pursuant to FCRA § 1681*o*, any person who is negligent in
10  failing to comply with any requirement imposed under the
11  FCRA with respect to any consumer is liable to that
12  consumer in an amount equal to the sum of (1) any actual
13  damages sustained by the consumer as a result of the
14  failure and (2) in the case of any successful action to
15  enforce any liability under 15 U.S.C. § 1681*o*, the costs
16  of the action together with reasonable attorneys' fees.
17  121. As a result of Defendants' negligent failure to comply
18  with the FCRA, Defendants' are liable to Plaintiffs in
19  an amount equal to the sum of (1) any actual damages
20  sustained by Plaintiffs as a result of said failure and
21  (2) the costs of this action together with reasonable
22  attorneys' fees.

### VI.  Demand for Jury Trial

Plaintiffs hereby demand a jury trial on all issues so triable.

**VII. <u>Prayer for Relief</u>**

WHEREFORE, Plaintiffs request that judgment be entered against Defendants for:

- a) Actual damages in an amount to be shown at trial;
- b) Statutory damages pursuant to FCRA § 1681n;
- c) Punitive damages pursuant to FCRA § 1681n;
- d) Costs and reasonable attorney's fees; and
- e) Such other relief as may be just and proper.

DATED   October 30, 2007  .

    s/ Floyd W. Bybee
Floyd W. Bybee, #012651
**LAW OFFICE OF**
**FLOYD W. BYBEE, PLLC**
2473 S. Higley Road
Suite 104, #308
Gilbert, Arizona 85295-1103
Office: (480) 756-8822
Fax: (480) 302-4186
floyd@bybeelaw.com

Attorney for Plaintiffs